1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

8
9
10

JAMES C. SILVAS, *et al.*,

11              Plaintiffs,                          Case No. 2:12-CV-1994-KJD-NJK

12     v.                                            **ORDER**

13     BANK OF AMERICA HOME LOANS, *et al.*,

14

15              Defendants.

16
17              Presently before the Court is Plaintiffs' Motion to Remand (#11).  Defendants filed a

18     response in opposition (#13).[1]  Also before the Court is Defendant Bank of America, N.A.'s Motion

19     to Dismiss (#4).  Defendants Countrywide Home Loans, Inc. ("Countrywide"), Countrywide Bank,

20     FSB, HSBC Bank USA, Recontrust Company, N.A. and Mortgage Electronic Registrations Systems,

21     Inc. filed a Joinder (#7) to Bank of America's motion to dismiss.  Construing Plaintiffs' *pro se*

22     pleadings liberally, as the Court must, the Court considers Plaintiffs' Individual Status Report (#15)

23     as an opposition to the motion to dismiss.  Finally before the Court is Defendant Fidelity National

24

25     _____

[1] Plaintiffs' motion to remand must be denied, because Defendant Bank of America's motion to expunge the lis
pendens, filed after the underlying state court action had been dismissed for failure to timely serve the summons and
complaint, was not an affirmative act clearly and unequivocally manifesting Defendant's intention to waive its right to
remove to federal court.  See Resolution Trust Corp. v. Bayside Developers, 43 F.3d 1230, 1240 (9th Cir. 1994); Acosta
v. Direct Merchants Bank, 207 F.Supp.2d 1129, 1131 (S.D. Cal. 2002).

1   Title Company's Motion to Dismiss (#18).  Plaintiffs filed a response in opposition (#22) to which

2   Fidelity replied (#23).

3   I.  Background

4          In April 2006, Plaintiffs purchased or refinanced property located at 1788 Amarone Way,

5   Henderson, NV 89012 ("the Property").  In order to complete the transaction, Plaintiffs obtained a

6   $1,000,000.00 loan from Countrywide which they secured with a Deed of Trust in favor of

7   Countrywide.  That Deed of Trust designated Defendant Mortgage Electronic Registration Systems,

8   Inc. ("MERS") as beneficiary and nominee of the lender.  The Deed of Trust also named CTC Real

9   Estate Services as Trustee.  The Deed of Trust allowed the Lender to foreclose if Plaintiffs failed to

10  make payments under the Note, and granted broad powers to MERS to act on the Lender's behalf,

11  including the power to foreclose, or take any action required of Lender, its successors or assignees.

12         Plaintiffs defaulted on their obligations in or about 2009.  They commenced negotiations with

13  Bank of America to modify the loan or to approve a short sale, but have not yet successfully

14  completed a deal.  Plaintiffs filed the present action in Nevada state court on or about April 13, 2011.

15  However, the action was eventually closed for failure to timely serve the summons and complaint on

16  or about February 14, 2012.  On March 28, 2012, Bank of America filed a motion in state court to

17  expunge the lis pendens.  The Court set a hearing on the motion, subsequent to which Plaintiffs filed

18  an amended complaint on April 12, 2012.  The Court then reopened the action, denied the motion to

19  expunge and Plaintiffs served the summons and complaint.  Defendants timely removed the

20  complaint on June 12, 2012.  Plaintiffs' amended complaint raises several causes of action and seeks

21  remedies styled as causes of action including: 1) injunctive relief; 2) violation of the Federal Truth in

22  Lending Act ("TILA"); 3) violation of the Home Ownership and Equity Protection Act ("HOEPA");

23  4) violation of the Real Estate Settlement Procedures Act ("RESPA"); 5) violations of the Nevada

24  Unfair Lending Practices Act; 6) breach of the duty of good faith and fair dealing; 7) fraud; 8)

25  violation of the Nevada Deceptive Trade Practices Act; 9) infliction of emotional distress; and 10)

26  quiet title.  Defendants have now moved to dismiss all the claims.

II.  Standard for a Motion to Dismiss

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit Partnership v. Turner Broadcasting System, Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Consequently, there is a strong presumption against dismissing an action for failure to state a claim. See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff has pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

The Iqbal evaluation illustrates a two prong analysis.  First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  Id. at 1949-51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  Id. at 1951.  If the allegations state plausible claims for relief, such claims survive the motion to dismiss.  Id. at 1950.

III.  Analysis

    A.  Claims under TILA, HOEPA, and RESPA

Plaintiffs have failed to oppose Defendants' motion to dismiss these claims based on the statute of limitations.  Claims for civil monetary damages arising under TILA must be filed within one year.  See 15 U.S.C. § 1640(e).  The one year period begins to run from the date of the closing of the credit transaction.  Id.; King v. Cal., 784 F.2d 910, 915 (9th Cir. 1986).  Since the credit transaction at issue in this action closed on or about April 28, 2006, Plaintiffs had until April 28, 2007 to raise their TILA claims.  Since Plaintiff's amended complaint was not filed until April 12, 2012, Plaintiffs' TILA claims are time-barred and dismissed.

3

1    Plaintiffs allege that Defendants violated HOEPA by failing to furnish the disclosures

2 required by Regulation Z, and therefore seek recission.  The right to rescind if the required notices or

3 disclosures are not delivered expires three years after the loan closes.  See 12 C.F.R. § 226.23(a).

4 Thus, Plaintiffs had to seek rescission under HOEPA no later than April 28, 2009.  Since they waited

5 another three years, Plaintiffs' claim for rescission under HOEPA is dismissed.

6    Finally, Plaintiffs' claim arising under RESPA based on failure to disclose the yield spread

7 premium expired within one year of the violation.  See 12 U.S.C. § 261.  Plaintiffs' claim for failure

8 to disclose the correct Notice on Servicing disclosing that the loan may be assigned, sold, or

9 transferred expired within three years of the violation.  Id.  Therefore, Plaintiffs' claims under

10 RESPA expired no later than April 28, 2009.  Therefore, Plaintiffs' claims under RESPA are time-

11 barred and dismissed.

12    B.  Nevada Unfair Lending Practices Act Claims – NRS 598D.100

13    Similarly, Plaintiffs have not opposed Defendants' motion to dismiss claims arising under the

14 Nevada Unfair Lending Practices Act ("NULPA").  Claims arising under NRS 598D.100 have a two

15 year statute of limitations.  See Nev. Rev. Stat. 11.190(4)(b)(violations of a statute not containing its

16 own limitations period have a two year statute of limitations).  Thus, Plaintiffs' claim that

17 Defendants did not use a commercially reasonable means to determine whether Plaintiffs had the

18 ability to repay the loan is time-barred and dismissed.

19    Even if the claim was not time-barred, the Court would still dismiss the claim, because the

20 pre-2007 version of Nev. Rev. Stat. 598D does not apply to the loan at issue here.  It only applies to

21 home loans subject to HOEPA which did not apply to the April 28, 2006 loan.  The amended 2007

22 version became effective October 1, 2007.  There is no express language or clear statutory intent to

23 make the amendments retroactive.  See Velasquez v. HSBC Mortg. Servs., 2009 WL 2338852, *3-4

24 (D. Nev. 2009).

25

26

1   C. Claim for Breach of Good Faith and Fair Dealing

2   Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair

3 dealing in its performance and execution." <u>A.C. Shaw Constr. v. Washoe County</u>, 784 P.2d 9 (Nev.

4 1989) (quoting Restatement (Second) of Contracts § 205). "[W]hen one party performs a contract in

5 a manner that is unfaithful to the purpose of the contract . . . damages may be awarded against the

6 party who does not act in good faith." <u>Hilton Hotels v. Butch Lewis Prods.</u>, 808 P.2d 919, 923 (Nev.

7 1991).

8   Plaintiffs' claim for breach of the duty of good faith and fair dealing fails because Plaintiffs

9 do not allege facts indicating that Defendants were "unfaithful to the purpose of the contract." <u>See</u>

10 <u>Hilton Hotels</u>, 808 P.2d at 932. Instead of asserting that Defendants violated the terms of the

11 mortgage agreement, Plaintiffs allege that Defendants violated their alleged duty to deal with

12 Plaintiff in good faith by misrepresenting to Plaintiffs the cost of credit, by quoting and giving

13 Plaintiffs a loan at a higher interest rate than their credit score qualified them for, by giving

14 conflicting disclosures, and encouraging Plaintiffs to acquire a mortgage obligation that was higher

15 than their current monthly rent. Even assuming these assertions are true, Plaintiffs have not stated a

16 viable claim because none of these allegations show that Defendants violated the terms of the written

17 mortgage contract. A party cannot breach the covenant of good faith and fair dealing before a

18 contract is formed. <u>See Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.</u>, 157 F.3d 933,

19 941 (2d Cir. 1998) ("an implied covenant relates only to the performance of obligations under an

20 extant contract, and not to any pre-contract conduct"). Because Plaintiffs' claim revolves entirely

21 around alleged promises and misrepresentations made before the contract was entered into, it fails as

22 a matter of law and is dismissed.

23   D. Fraud

24   Plaintiffs' fraud claim alleges that Defendants misrepresented information regarding

25 Plaintiffs on their mortgage application and that Defendants misrepresented the type of loan that

26 Plaintiffs were receiving. However, Plaintiffs' claims are barred by the statute of limitations.

1   Nevada Revised Statute § 11.190(3)(d) establishes a three year limit on fraud claims.  A reasonable

2   person would have known what type of loan they received when they signed the deed of trust,

3   adjustable rate rider and the note.  Therefore, Plaintiffs' claim arose no later than April 24, 2006.

4   Since Plaintiffs' amended complaint was filed on April 12, 2012, the fraud claims are time-barred

5   and dismissed.

6           E.  Deceptive Trade Practices Act

7           Similarly, Plaintiffs' claims for violations of the Nevada Deceptive Trade Practices Act, Nev.

8   Rev. Stat. § 598.0915 have a limitations period of three years.  See Nev. Rev. Stat. § 11.190(3)(d).

9   Therefore, Plaintiffs' claim arose no later than April 24, 2006.  Since Plaintiffs' amended complaint

10  was filed on April 12, 2012, the Deceptive Trade Practices Act claims are time-barred and dismissed.

11          F.  Claim for Infliction of Emotional Distress

12          In order to establish a claim for intentional infliction of emotional distress in Nevada, a

13  plaintiff must allege that (1) the defendant engaged in extreme and outrageous conduct with the

14  intention of causing emotional distress or with reckless disregard for plaintiff's emotional distress;

15  (2) the plaintiff suffered severe or extreme emotional distress as a result; and (3) the defendant's

16  action were the proximate cause of plaintiff's emotional distress.  Jordan v. State, 110 P.2d 30, 52

17  (Nev. 2005).  The Court finds Plaintiffs' claim fails as a matter of law because they fail to allege

18  facts indicating that Defendants acted in an extreme or outrageous manner.  Additionally, the Court

19  has dismissed Plaintiffs' fraud claims, and misrepresenting information contained in a loan document

20  does not, in and of itself, constitute extreme or outrageous conduct.  See Craig v. M&O Agencies,

21  Inc., 496 F.3d 1047, 1058 (9th Cir. 2007).  Moreover, "[t]o qualify as extreme and outrageous, the

22  conduct at issue must be so outrageous in character, and so extreme in degree, as to go beyond all

23  possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized

24  community."  Id.  Defendants' alleged misconduct, even if true, does not rise to this level.  Therefore,

25  the Court dismisses this claim.

26

1
    G.  Quiet Title

2
    Plaintiffs' claim to quiet title must also be dismissed.  In Nevada, a quiet title action may be

3
brought "by any person against another who claims an…interest in real property, adverse to the

4
person bringing the action, for the purpose of determining such adverse claim." N.R.S. § 40.010.  In

5
a claim for quiet title "the burden of proof rests with the plaintiff to prove a good title in himself."

6
Velazquez v. Mortgage Electronic Registration Systems, Inc., No. 2:11–CV–576, slip op., 2011 WL

7
1599595, at *2 (D. Nev. Apr. 27, 2011) (quoting Breliant v. Preferred Equities Corp., 918 P.2d 314,

8
318 (Nev.1996)).  Additionally, an action to quiet title requires a plaintiff to allege that he has paid

9
any debt owed on the property. See Ferguson v. Avelo Mortgage, LLC. No. B223447, 2011 WL

10
2139143, at *2 (Cal. App. 2d June 1, 2011).  Essentially, "he who seeks equity must do equity."

11
McQuiddy v. Ware, 87 U.S. 14 (1873).

12
    Although courts have power to vacate a foreclosure sale where there has been fraud, such as

13
sham bidding and the restriction of competition, or inadequacy of price coupled with other

14
circumstances of fraud in the procurement of the foreclosure decree, or where the sale has been

15
improperly, unfairly or unlawfully conducted, "an action to set aside a trustee's sale for irregularities

16
in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for

17
which the property was security." Arnolds Mgmt. Corp. v. Eischen, 158 Cal. App. 575, 578 (Cal. Ct.

18
App. 1984). See also FPCI RE-HAB 01 v. E & G Investments, Ltd., 207 Cal. App. 3d 1018, 1021

19
(Cal. Ct. App. 1989) ("[t]he rationale behind the rule is that if plaintiffs could not have redeemed the

20
property had the sale procedures been proper, any irregularities in the sale did not result in damages

21
to the plaintiffs").  Plaintiffs have failed to allege whether they were in the position to cure the

22
default at the time the Notice of Default was sent.  Furthermore, they did not respond in opposition to

23
the motion to dismiss that they could in fact cure any default.  Therefore, this claim is dismissed.

24
    H. Injunctive Relief

25
    Plaintiffs' claim for injunctive relief rest in their belief that Defendants must produce the note

26
in order to foreclose on the Property and cannot act without actual possession of the note.  However,

1   what Nev. Rev. Stat. § 107.080 requires is that the beneficiary, successor in interest of the

2   beneficiary, or trustee record a notice of breach and election to sell. See Nev. Rev. Stat. §

3   107.080(c). In conjunction with the recorded notice of breach and election to sell, the recording

4   party must include a notarized "affidavit of authority to exercise the power of sale[.]" Id. The

5   affidavit must include the name of the trustee, the current holder of the note, the current beneficiary

6   of record and the servicer of the debt secured by the deed of trust. See Nev. Rev. Stat. §

7   107.080(c)(1). It must also, amongst other requirements, state that the beneficiary, successor in

8   interest of the beneficiary, or trustee is in actual or constructive possession of the note. See Nev.

9   Rev. Stat. § 107.080(c)(3). It must state that the trustee has the authority to exercise the power of

10  sale pursuant to the instruction of the beneficiary of record and the current holder of the note. See

11  Nev. Rev. Stat. § 107.080(c)(4). The Nevada statutes also require that notice of default include a

12  form upon which the grantor may indicate an election to enter into mediation. See Nev. Rev. Stat.

13  107.086(2)(a)(4). At the mediation, the beneficiary or his representative must bring the original or a

14  certified copy of the original deed of trust, note, and each assignment of the deed of trust or note.

15  See id. Failure to bring the required documentation could result in sanctions. See Nev. Rev. Stat.

16  107.086(2)(a)(5).

17         To qualify for injunctive relief, a plaintiff must demonstrate: (1) a likelihood of success on

18  the merits; (2) a likelihood of irreparable harm; (3) the balance of hardships favors plaintiff; and (4)

19  an injunction is in the public interest. See Winter v. Natural Res. Def. Council, 555 U.S. 7, 120

20  (2008); eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006). Thus, as pled, Plaintiffs fail to

21  state a claim requiring injunctive relief. Since Plaintiffs have not stated a claim for relief in their

22  other claims, Plaintiffs have failed to show a likelihood of success on the merits, and the claim for

23  injunctive relief is dismissed.

24         I. Fidelity National Title

25         Additionally, Plaintiffs have failed to state any claims against Defendant Fidelity National

26  Title. There is no allegation in the complaint that Fidelity National Title performed any of the

8

1  actions of which Plaintiffs complain.  Fidelity has taken none of the actions in the foreclosure

2  process.  Fidelity did not loan Plaintiffs any money nor play any role in the lending process.  Fidelity

3  did not contract in any way with Plaintiffs.  Fidelity issued a title report in 2006 and insured transfer

4  of good and proper title.  Fidelity does not insure that Plaintiffs will make payments, or that

5  beneficiaries, successors in interest to beneficiaries or trustees will not begin foreclosure

6  proceedings.  Accordingly, in addition to the reasoning already provided, Plaintiffs have failed to

7  state any claims against Defendant Fidelity National Title.

8  IV.  Conclusion

9      Accordingly, IT IS HEREBY ORDERED that Plaintiffs' Motion to Remand (#11) is

10  **DENIED**;

11      IT IS FURTHER ORDERED that is Defendants Bank of America, N.A.'s Motion to Dismiss

12  (#4) is **GRANTED**;

13      IT IS FURTHER ORDERED that Defendant Fidelity National Title Company's Motion to

14  Dismiss (#18) is **GRANTED**;

15      IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendants

16  and against Plaintiffs.

17      DATED this 23rd day of January 2013.

18

19

20  _____
    Kent J. Dawson
21  United States District Judge

22

23

24

25

26